IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA J. CHILDERS,                              No. 3:23-cv-00547-HZ

                    Plaintiff,          OPINION & ORDER

      v.

TTI CONSUMER POWER TOOLS, INC., a
Foreign Corporation; and HOME DEPOT
U.S.A., INC., a Foreign Corporation,

           Defendants.

J. Randolph Pickett
Kimberly O. Weingart
Rachel M. Jennings
Kyle T. Sharp
Pickett Dummigan Weingart, LLP
Centenniel Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204

Matthew D. Kaplan
Kaplan Law, LLC
50 S.W. Pine Street, Suite 302
Portland, OR 97204

      Attorneys for Plaintiff

Timothy J. Fransen
Cosgrave Vergeer Kester, LLP
900 SW Fifth Avenue, 24th Floor
Portland, OR 97204

Jeffrey R. Williams
David W. Kempen
Riley Safer Holmes & Cancila, LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104

  Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

  Defendants TTI Consumer Power Tools, Inc. ("TTI") and Home Depot U.S.A., Inc.

("Home Depot") move for renewed judgment as a matter of law or, in the alternative, for a new

trial or remittitur. Defs.' Mot., ECF 93. Defendants also object to Plaintiff's Bill of Costs. Defs.'

Obj., ECF 96. Plaintiff also filed a Stipulated Motion to Amend the Judgment specifying the

amount of prejudgment interest to which Plaintiff is entitled. ECF 97. And finally, Defendants

filed an Offer of Proof, ECF 101, that Plaintiff subsequently moved to strike, ECF 102. The

Court denies Defendants' motions for renewed judgment as a matter of law, for a new trial, or

remittitur. The Court grants Plaintiff's Stipulated Motion to Amend the Judgment and Plaintiff's

corrections to the Bill of Costs. And because the Court declines to consider Defendants' Offer of

Proof, the Court denies Plaintiff's Motion to Strike as moot.

## BACKGROUND

  The parties are familiar with the facts, and the Court will only address them briefly here.

On March 6, 2023, Plaintiff Sara Childers sued Defendants in Oregon state court, bringing state-

law claims for strict liability, negligence, and negligence per se. Compl. Ex. A, ECF 1-1.

Plaintiff brought the claims after she sustained injuries to her right hand while using a RIGID

R4331 planer. *Id.* The case was subsequently removed to federal court on April 13, 2023, based on diversity of citizenship, 28 U.S.C. § 1441(b). Notice of Removal, ECF 1. Plaintiff filed her amended complaint on August 11, 2023. First Am. Compl. ("FAC"), ECF 15.

Trial was held from July 15–22, 2024. *See* ECF 67–75. The jury returned a verdict for Plaintiff on her products liability and negligence claims. Jury Verdict, ECF 77. It awarded Plaintiff $1,194,176 in economic damages and $10,000,000 in non-economic damages. *Id.* at 3. On August 12, 2024, the Court entered judgment, awarding economic and non-economic damages in accordance with the jury verdict and specifying the pre- and post-judgment interest rates. J., ECF 82. The Court also dismissed Plaintiff's third claim for negligence per se. *Id.* at 2. Defendants now timely renew their motion for judgment as a matter of law, or in the alternative for a new trial or remittitur.

## STANDARDS

### I.     Renewed Motion for Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), a renewed motion for judgment as a matter of law should be granted "'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). The Supreme Court has set forth the following standard for a court to apply when a losing party moves to set aside a jury verdict:

> [I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the

record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (internal citations and quotation marks omitted). In sum, a court must uphold the jury's verdict "if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao*, 307 F.3d at 918.

## II.    Motion for New Trial

Under Rule 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted).

Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.

*Id.* (internal quotations omitted). Although "the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (internal citation and quotation omitted). The authority

to grant a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980).

### III.    Motion for Remittitur

A court may use remittitur to correct an excessive verdict. *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 n.3 (9th Cir. 1983) (citing Charles Alan Wright & Arthur R. Miller, 11 *Federal Practice and Procedure* § 2815 (1973)). For a state-law claim, state law governs the determination of whether the damages award was excessive. *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989) (so holding for an award of punitive damages on a state-law claim); *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 419, 435 n.18 (1996) (so holding for review of compensatory damages).

### DISCUSSION

### I.    Renewed Motion for Judgment as a Matter of Law

Defendants renew their motion for judgment as a matter of law on the jury's verdict in favor of Plaintiff. The crux of Defendants' argument is that there was insufficient evidence for the jury to find that a product defect or inadequate warning caused Plaintiff's injury. Defs.' Mot. 6. To recover on a claim for strict liability under Oregon law, a plaintiff must prove that "the product at issue is both defective and unreasonably dangerous." *McCathern v. Toyota Motor Corp.*, 332 Or. 59, 77, 23 P.3d 320 (2001). As relevant here, a plaintiff must prove that "injury to the user . . . was *caused by* the product's defective condition." *Id.* at 77 n.15 (emphasis added). And Defendants argue that Plaintiff failed to prove that "the planer's design or TTI's negligence in designing the planer or issuing warnings about it caused the incident." Defs.' Mot. 10. The Court disagrees.

Dr. Ruston Hunt, Plaintiff's human factors expert, discussed the warnings included with the planer, Tr. 122:12–124:12,[1] before concluding that a lack of adequate warnings about wearing gloves while operating the planer rendered it unreasonably dangerous, Tr. 130:11–22. After describing how gloves can exacerbate injuries, Tr. 97:19–98:3, he opined that Plaintiff's use of gloves "was a significant issue in the case," Tr. 175:18–19.

Robert Bullen, Plaintiff's mechanical engineering expert, noted the lack of guarding on the planer to prevent inadvertent contact. Tr. 207:23–24. And he discussed possible guards and measures that could have been used. Tr. 213:11–16, 214:10–13. Mr. Bullen also testified about a prior ingestion incident involving a previous model of the planer, and that there was no discussion of that incident in the safety review of the planer at issue here. Tr. 220:9–23.

Plaintiff testified that she could not recall exactly how her injury occurred. *See* Tr. 355:23–356:11. But she described how, as she "was putting [a board] in initially . . . it felt to [her] like it stalled, and then it did a jump and it sucked really fast," and then her hand was in the planer. Tr. 356:2–10. She also testified that she used gloves because she was "trying to be as safe as possible," and she would not have worn them had there been a warning. Tr. 368:7–15.

Dr. Michael Prange and Jack Hyde, two of Defendants' expert witnesses, testified about whether Plaintiff's injuries could have occurred without gloves. Dr. Prange's testimony was based on testing that he conducted to determine how Plaintiff's injuries occurred. Tr. 608:22–609:2. And he opined that the accident could have occurred as it did even if Plaintiff were not wearing gloves. Tr. 643:1–4. Mr. Hyde, a safety consultant, Tr. 663:23, similarly concluded that the accident could have occurred as it did if Plaintiff were not wearing gloves, Tr. 706:16–707:7.

---

[1] Citations to "Tr." refer to pages from the Official Court Transcript, filed here as Docket Nos. 83–91.

Viewing all the evidence described above in the light most favorable to Plaintiff, there was substantial evidence to support the jury's verdict. Specifically, there was sufficient evidence allowing the jury to infer that a lack of warning about wearing gloves—and Plaintiff's use of gloves during the incident—caused Plaintiff's injury. Plaintiff's and Defendants' experts disagreed about the importance of Plaintiff's gloves to her injury. But the jury was not required to credit Defendants' experts and their conclusions. Therefore, Defendants' renewed motion for judgment as a matter of law is denied.

## II.     Motion for New Trial

Defendant moves for a new trial for five reasons, including that: (1) this Court abused its discretion in allowing Plaintiff to amend her FAC at the end of trial to request a larger noneconomic damage award; (2) Plaintiff's counsel engaged in misconduct during trial and closing argument; (3) this Court erred in allowing Adam Warkentien to testify remotely as an impeachment witness, and Plaintiff's counsel improperly used his testimony; (4) the verdict is against the clear weight of the evidence; and (5) the damages awarded by the jury are excessive. Defs.' Mot. 10–29. For the reasons explained below, the Court concludes that Defendants are not entitled to a new trial on any of those grounds, and Defendants' motion for a new trial is denied.

### A.     Changing Requested Noneconomic Damages

Defendants argue that this Court erred by allowing Plaintiff to amend her FAC to remove the amount of noneconomic damages alleged. Defs.' Mot. 10–12. Defendants argue that they were prejudiced by the amendment because they based their settlement and trial preparations on Plaintiff's initial allegation of $4.5 million in noneconomic damages, and their trial management decisions—including whether to call a particular witness—were based on the original noneconomic damages. *Id.* at 13–14. This Court disagrees.

Rule 26(a) governs initial disclosures and provides that the parties must, among other things, disclose, "a computation of any category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Disclosures under Rule 26(a)(1) "are designed to accelerate the exchange of basic information, to help focus the discovery that is needed, and facilitate preparation for trial or settlement." *Montoya v. Retiree Health Care Auth.*, No. 18-cv-578 JCH/JFR, 2019 WL 2718689, at *3 (D.N.M. filed on June 7, 2019) (internal citation and quotation omitted).

Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Pleadings may be amended before, during, and even after trial. Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* § 1488 nn.3–11 (3d ed.) (citing cases allowing amendments at various stages of proceedings). A court may permit a plaintiff to amend their complaint during trial to increase their prayer for damages. *See, e.g.*, *Zatina v. Greyhound Lines, Inc.*, 442 F.2d 238, 242 (8th Cir. 1971); *see also* Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* § 1474 n.19 (3d ed.) (citing and describing cases). A court should deny leave to amend under limited circumstances, including when granting the amendment would result in "undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962). But whether to allow such an amendment "falls within the sound discretion of the trial court." *Zatina*, 442 F.2d at 242.

Defendants acknowledge that "federal pleading standards do not generally require an allegation of the amount of noneconomic damages." Defs.' Mot. 13. Nevertheless, they argue that allowing Plaintiff to amend the complaint violates Rule 26(a)(1)(A)(iii). *Id.* But this is not a case where the request to amend the noneconomic damages amounted to a "trial by ambush." *Compare* *Am. Realty Tr., Inc. v. Matisse Partners, LLC*, No. Civ.A.3:00-CV-1801-G, 2002 WL

1489543, at *1–3, 6–7 (N.D. Tex. July 10, 2002) (denying the plaintiffs' motion to amend complaint with a new category of damages that increased overall damages sought from $400K to $30 million shortly before trial), *with Zatina*, 442 F.2d at 242 (during personal injury trial alleging negligence, the trial court properly permitted the plaintiff to amend her complaint and allege damages of $50K rather than $25K). Here, Defendants had notice that Plaintiff was seeking a significant award of noneconomic damages. And Plaintiff's amendment did not add an entirely new category of damages, nor did it add a new claim. The facts underlying the case— and the parties' arguments as to their weight and how the jury should interpret them—remained the same after the amendment. Therefore, the Court finds that allowing the amendment did not violate the purposes underlying Rule 26(a)(1)(A)(iii) and did not prejudice Defendants.

Defendants also argue that their witness presentation would have been different had they known that Plaintiff would increase her requested noneconomic damages. Defs.' Mot. 13–14. Specifically, they claim that they would have called Armando Morales Rivera, their life care planner expert, to testify. Defs.' Reply in Supp. 9–10, ECF 100. But that argument is unavailing. "'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment." Or. Rev. Stat. § ("O.R.S.") 31.705(2)(b). Thus, they encompass harms that are unique to a plaintiff and generally outside the purview of an expert witness. Moreover, this Court doubts Defendants' post-trial justification that $4.5 million was too small a sum to justify calling Mr. Rivera, but that $10 million would have led them to call him. In sum, the Court concludes that Defendants' presentation of evidence was not prejudiced by allowing Plaintiff to amend her complaint.

B.        Improper Conduct and Argument by Plaintiff's Counsel

Defendants argue that the Court should grant a new trial because Plaintiff's counsel engaged in misconduct and made improper arguments in closing. Defs.' Mot. 14–18. Defendants note that Plaintiff's counsel was "admonished for making faces" and showed a "lack of decorum" while Defendants' counsel was speaking. *Id.* at 14–15, 17. And Defendants highlight Plaintiff's counsel's arguments during closing and rebuttal that the jury should "send a message" with its award. *Id.* at 15–17. Ultimately, the Court concludes that Plaintiff's counsel's conduct does not warrant a new trial.

Improper argument can be grounds for a new trial, but "generally, misconduct by trial counsel [only] results in a new trial if the flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (internal citations and quotations omitted).

> In evaluating the likelihood of prejudice from the comments, we should consider the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself.

*Id.* at 1193 (internal citations and quotations omitted).

As an initial matter, any facial expressions or reactions by Plaintiff's counsel did not so permeate the proceeding as to require a new trial. This Court noted Plaintiff's counsel's body language during opposing counsel's opening and closing arguments. Tr. 76:19–77:3 (after opening statements); Williams Decl. ¶ 2, ECF 95 (describing a sidebar after Defendants' counsel's closing argument). And the Court acted to inform counsel—and subsequently remind her—that such actions were unprofessional. *Id.* The Court concludes that those incidents did not sufficiently permeate the proceeding as to improperly influence the jury.

10 – OPINION & ORDER

During closing and rebuttal argument, Plaintiff's counsel made several "send a message" arguments that Defendants objected to as improper. Defs.' Mot. 15–17 (citing excerpts from the transcript). For example, counsel said "You [the jury] can tell the defendants that holding profits over human safety --." Tr. 825:25–826:1. Similarly, Plaintiff's counsel told the jury "You get to say to companies like TTI – and they are here. They're listening. They're here. You have Mr. Winchester here and you – and Mr. Glover in the back. They're listening. You tell them -- . . . in clear -- . . . clear unambiguous language --." Tr. 875:23–876:7. In all, Defendants identify seven instances of impermissible argument during Plaintiff's closing and rebuttal argument. Defs.' Mot. 15–17. Defendants objected to those arguments, and the Court sustained those objections. *See, e.g.*, Tr. 876:8–9 ("Sustained. You cannot argue the way you're arguing.").

The Court concludes that—in the totality of the circumstances—Plaintiff's counsel's improper arguments are not an adequate basis for a new trial. As discussed, Plaintiff had a strong case for products liability and negligence, and nothing suggests that the improper argument impacted the verdict. Moreover, although there were several impermissible "send a message" arguments, each was objected to by Defendants, and the Court sustained those objections. Therefore, the misconduct did not so permeate the proceeding as to warrant a new trial.

C.    Mr. Warkentien's Testimony

Defendants advance several arguments related to Mr. Warkentien's testimony and Plaintiff's counsel's use of his testimony. Defs.' Mot. 18–26. The Court finds that none of those arguments justify granting a new trial.

i.    Mr. Warkentien's Testimony as an Impeachment Witness

Defendants argue that this court erred by allowing Mr. Warkentien to testify as an impeachment witness. *Id.* at 18–22. Plaintiff responds that she properly disclosed him as a

potential impeachment witness. Pl.'s Mem. 27, ECF 98. The Court agrees with Plaintiff and concludes that Mr. Warkentien's testimony as an impeachment witness is not a proper basis for a new trial.

"Witnesses called solely for impeachment purposes need not be identified in disclosures under Rule 26(a)." *Robillard v. Opal Labs, Inc.*, No. 3:16-cv-00780-AC, 2021 WL 12319090, at *4 (D. Or. Feb. 8, 2021) (citing Fed. R. Civ. P. 26(a)(1)(A)(i)); *see also Kempf v. Barrett Bus. Servs., Inc.*, 336 Fed. App'x 658, 661–62 (9th Cir. 2009) (affirming district court's exclusion of an untimely disclosed witness's testimony when it would be used only "'in part' to impeach"). But Rule 26(a)'s exception for impeachment evidence does not apply to testimony that has substantive value relating "to a plaintiff's prima facie case or a defendant's affirmative defenses." *Mort v. DeJoy*, No. 1:19-cv-0652-JLT-SKO, 2022 WL 14129778, at *1 (E.D. Cal. Oct. 24, 2022). Thus, impeachment, in the context of Rule 26(a) "refers to attacks on the credibility of a witness." *Id.*

Plaintiff sought the Court's leave for Mr. Warkentien to testify as an impeachment witness after Chip Winchester, a defense witness, testified. Tr. 574:14–575:1 (identifying him as a rebuttal witness); Tr. 644:13–20 (clarifying that he was an impeachment witness). Mr. Winchester testified about his investigation of a prior ingestion incident with a similar planer. Tr. 518:15–25. Mr. Winchester testified that, in that incident, Mr. Warkentien intentionally reached into the raised head of the planer, his clothing was caught in the cutting head, and he was injured. Tr. 519:5–520:16. He also testified about the size of the wood Mr. Warkentien was planing and the settings of the planer. Tr. 530:17–20. Plaintiff disputed the accuracy of Mr. Winchester's testimony and sought to have Mr. Warkentien testify. Tr. 644:17–645:8. Based on those

representations, the Court found that Mr. Warkentien was an impeachment witness. Tr. 654:21–655:5.

When Mr. Warkentien testified, he described the accident and disputed that he intentionally reached into the planer. Tr. 728:12–19. He described the investigation process. Tr. 736:3–738:2. And he also disputed Mr. Winchester's description of his planer's settings. Tr. 745:13–19. During Mr. Warkentien's testimony, the Court sustained Defendants' objections when questions went beyond the scope of impeachment. *See, e.g.*, Tr. 733:25–734:14.

The Court concludes that Mr. Warkentien properly testified as an impeachment witness. As described above, his testimony was used to attack Mr. Winchester's credibility by contradicting his testimony on the circumstances surrounding a prior ingestion incident with a similar planer. Plaintiff did not use Mr. Warkentien's testimony to establish her prima facie case. Therefore, his testimony is not a proper basis for a new trial.

ii.     Plaintiff's Counsel's Use of Mr. Warkentien's Testimony

Defendants argue that, during closing argument, Plaintiff's counsel used Mr. Warkentien's testimony to improperly influence the jury on the proper amount of damages. Defs.' Mot. 22–24. Specifically, they argue that Plaintiff's counsel "transform[ed] closing argument into a plea for the jury to compensate *both people*." *Id.* at 24 (emphasis in original). The Court disagrees.

As explained, Defendants and Plaintiff relied on testimony about the prior ingestion incident involving Mr. Warkentien. And both sought to characterize that evidence as supporting their arguments. *See, e.g.*, Tr. 810:24–815:11 (Plaintiff's closing argument); Tr. 837:23–843:4 (Defendants' closing argument). But the Court does not find that Plaintiff's counsel's discussion of Mr. Warkentien improperly asked the jury to include damages for him when awarding

damages. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Here, the jury was properly instructed about the difference between evidence and argument. Jury Instr. 5, ECF 78 ("Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing argument and at other times is intended to help you interpret the evidence, but it is not evidence."). And the verdict sheet asked about Plaintiff and the damages that she suffered. Jury Verdict 3. In sum, the Court finds that Plaintiff's use of Mr. Warkentien's testimony is not a proper basis for a new trial.

### iii.  Mr. Warkentien's Remote Testimony

Defendants argue that the Court abused its discretion by allowing Mr. Warkentien to testify remotely. Defs.' Mot. 24–26. Plaintiff responds that Mr. Warkentien was properly allowed to testify remotely given (1) his familial and work constraints, (2) the short time between the Court's ruling allowing him to testify and when he would be required to appear, and (3) the unforeseen nature of the need for impeachment testimony. Pl.'s Mem. 36. The Court agrees with Plaintiff and finds that Mr. Warkentien's remote testimony is not a proper basis for a new trial.

Generally, under Rule 43(a), "witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a). But "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id.* "Contemporaneous transmission may be better than an attempt to reschedule the trial," and "[a]n unforeseen need for the testimony of a remote witness that arises during trial . . . may establish good cause and compelling circumstances." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment.

Whether to allow a witness to testify remotely is within the discretion of the court. *Eller v. Trans Union, LLC*, 739 F.3d 467, 477 (10th Cir. 2013).

Courts have generally found that distance alone is not good cause or a compelling circumstance to grant remote testimony. *See, e.g.*, *J.D. v. Price*, 619 F. Supp. 3d 523, 530 (W.D. Pa. 2022); *but see City of Almaty, Kaz. v. Ablyazov*, No. 15-cv-5345 (JGK), 2022 WL 17156623, at *1 (S.D.N.Y. Nov. 21, 2022) (allowing remote testimony when domestic responsibilities would "make it impossible [for a witness] to fly to the United States" from Turkey). But multiple factors combined may present good cause in compelling circumstance to allow testimony by contemporaneous transmission. *In re Junior Larry Hillbroom Litig.*, No. 1:10-CV-00009, 2022 WL 1685020, at *8 (D. N. Mar. I. May 26, 2022) (allowing remote testimony after considering distance combined with the COVID-19 pandemic). And "many recent cases acknowledge that the near-instantaneous transmission of video testimony through current technology permits the jury . . . to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, and his calmness or consideration." *Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*, 470 F. Supp. 3d 735, 739 (E.D. Mich. 2020) (internal citations and quotations omitted).

Mr. Warkentien lived in Michigan. Tr. 575:4. He also had three children, including a four-month-old infant, and a full-time job in Michigan. Tr. 575:5, 645:16–17. Plaintiff's counsel represented that it would be a substantial hardship for Mr. Warkentien to appear in person once the need for his testimony was apparent. Tr. 576:1–2. And Plaintiff's counsel represented that the need for Mr. Warkentien's testimony was unexpected and necessitated by Mr. Winchester's testimony. Tr. 648:18–651:9.

Here, good cause in compelling circumstances existed to allow Mr. Warkentien to testify remotely. The distance from Michigan to Oregon—standing alone—may not have been sufficient. But that distance, combined with the unforeseen need for Mr. Warkentien's testimony, represents the precise circumstances that the rule is intended to address. Moreover, allowing him to testify through contemporaneous transmission allowed the trial to proceed as scheduled. Lastly, Mr. Warkentien's video testimony allowed the jury to evaluate his credibility and provided Defendants an opportunity to cross examine him. Because there was good cause in compelling circumstances, Mr. Warkentien's remote testimony is not a proper basis for a new trial.

### D.    The Verdict and the Weight of the Evidence

Defendants argue that the jury's verdict was against the weight of the evidence. Defs.' Mot. 26–28. Specifically, they argue that a new trial is proper because (1) there was insufficient evidence about how Plaintiff's injury occurred, *id.* at 26–27; (2) the evidence showed that Plaintiff's injury was caused by her misuse of the product, *id.* at 27; and (3) the jury's finding that Plaintiff's comparative fault was not a cause of her injury is against the weight of the evidence and internally inconsistent, *id.* at 27. The Court disagrees.

When considering a Rule 59 motion for a new trial, the district court "is not required to view the trial evidence in the light most favorable to the verdict." *Experience Hendrix LLC v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (citation omitted). Instead, "a district court has 'the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury . . . where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1213 (D. Or. 2015) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.

1990)); *see also Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir.

1987) (noting the district court should grant a new trial if it "is left with the definite and firm

conviction that a mistake has been committed").

The Court finds that the jury's verdict was not against the clear weight of the evidence.

First, Plaintiff provided sufficient evidence of causation. As described above, Plaintiff could not

recall exactly how the accident occurred, but she described what she did remember, provided

expert testimony in support of her theory of causation, and testified that she would not have worn

gloves if there was a warning. Second, because there was conflicting testimony as to whether

Plaintiff was misusing the planer when her injury occurred, a verdict in her favor is not against

the clear weight of the evidence. Plaintiff testified that her use was consistent with the planer's

manual and instructions. *See, e.g.*, Tr. 355:24–356:5 (Plaintiff explaining that she "would never

go past the tray" when putting a board in). And although Dr. Prange's testing led him to opine

that Plaintiff's injury could not have occurred as she described, Tr. 621:21–622:5, Mr. Hyde said

that Plaintiff's description of how she used the product indicated that she was not misusing it, Tr.

719:21–720:3. Finally, the jury's finding that Plaintiff's comparative fault was not a cause of her

injuries is also not against the clear weight of the evidence given the conflicting testimony

described above.

E.     Excessiveness of the Damages Awarded

Defendants argue that the noneconomic damages awarded to Plaintiff were neither

rational nor based on evidence. Defs.' Mot. 28–29. Defendants repeat several of the arguments

rejected above to argue that the verdict was excessive and was impermissibly obtained to punish

Defendants rather than provide just compensation to Plaintiff. *Id.* But Defendants misstate the

standard by which this Court reviews the jury's award, and the Court concludes that the size of the verdict is not a proper basis for a new trial.

"A federal district court applies state law in evaluating a Fed. R. Civ. P. 59 motion when a party argues that a jury's verdict on a state law claim is excessive." *Mueller v. Dep't of Pub. Safety*, 595 F. Supp. 3d 920, 926 (D. Haw. 2022). "Under the Oregon Constitution, the Court lacks the discretion to award a new trial . . . based on excessiveness absent a finding of 'no evidence' to support the verdict." *Allison v. Smoot Enters. Inc.*, No. 2:17-cv-01598-SU, 2019 WL 5095779, at *9 (D. Or. Oct. 11, 2019) (citing Or. Const. art. VII, § 3).

This Court finds that there was evidence to support the noneconomic damages award. As explained, noneconomic damages encompass pain, emotional distress, and interference with Plaintiff's normal and usual activities. And Plaintiff offered ample testimony about how the injury affected her in such ways. *See, e.g.*, Tr. 365:1–23. Therefore, the Court cannot say that no evidence supports the jury's award.

### III.    Motion for Remittitur

Defendants move for remittitur, arguing the noneconomic damages awarded are excessive. Defs.' Mot. 29–30. The parties disagree on whether state or federal law controls the review of the jury award here and—under either standard—whether remittitur is proper. The Court concludes that state law controls, and Defendants are not entitled to a reduction of the noneconomic damages.

"Under federal law, a court may conditionally grant a defendant's motion for a new trial unless the plaintiff agrees to a reduced damages award, also known as a remittitur." *VanValkenburg v. Or. Dep't of Corr.*, No. 3:14-cv-00916-MO, 2017 WL 532950, at *5 (D. Or. Feb. 8, 2017). In federal question cases, courts give "substantial deference to a jury's finding of

the appropriate amount of damages . . . unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of* Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996). But in federal cases based on diversity jurisdiction, state law applies to the issue of remittitur. *Gasperini*, 518 U.S. at 427–28; *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 768 Fed. App'x 756, 758 (9th Cir. 2019) ("A question of the legality of the jury's award of damages—in a federal diversity jurisdiction case, as here—is substantive, and thus state law applies."). Plaintiff brought Oregon state law claims against Defendants, and the case was heard in this Court based on diversity jurisdiction. Thus, Oregon law applies to Defendants' motion for remittitur.

"Article VII, Section 3 of the Oregon Constitution limits a court's discretion to award a remittitur." *VanValkenburg*, 2017 WL 532950, at *5; *see also Garza v. City of Salem*, No. 3:22-cv-00721-HZ, 2024 WL 727005, at *6 (D. Or. filed on Feb. 22, 2024). That clause states that "[n]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Or. Const. art. VII, § 3. The Oregon Supreme Court has interpreted that clause to provide that Oregon courts cannot declare that the evidence does not support the verdict simply because the verdict is too large. *Van Lom v. Schneiderman*, 187 Or. 89, 104, 210 P.2d 461 (1949), *overruled in part on other grounds by Oberg v. Honda Motor Co.*, 320 Or. 544, 888 P.2d 8 (1995); *Trebelhorn v. Prime Wimbledon SPE, LLC*, 372 Or. 27, 34, 544 P.3d 342 (2024). Therefore, the award of damages on Plaintiff's claims "is excessive only if no evidence in the record supports the verdict." *Garza*, 2024 WL, 727005, at *6 (citing *VanValkenburg*, 2017 WL 532950, at *5 and *Allison*, 2019 WL 5095779, at *7).

Defendants ask that this court reduce the noneconomic damages to no more than $4,500,000. Defs.' Mot. 29–30. They argue that figure is "in line with plaintiff's pretrial allegations, the evidence of plaintiff's own conduct in bringing about the injury, and plaintiff's opening statement." *Id.* at 30. Defendants further argue that there is "no evidence" in the record to support increasing the noneconomic damages award to $10,000,000 from Plaintiff's "longstanding assessment of her" $4,500,000 in pain and suffering damages. Defs.' Reply in Supp. 15.

The Court finds no basis to reduce the jury's award of noneconomic damages. As discussed, there is evidence in the record supporting an award of noneconomic damages. The Court's conclusion may have been different under the federal standard. But Oregon law does not permit a reduction of the jury's verdict because the Court believes the award is excessive. The Court cannot say that no evidence in the record supports the award. Defendants' motion for remittitur as to the noneconomic damages award on Plaintiff's claims is therefore denied.

**IV.    Defendants' Offer of Proof and Plaintiff's Motion to Strike**

Defendants filed an "Offer of Proof to Supplement the Record with the Release Agreement between Adam Warkentien and TTI Consumer Power Tools" on December 6, 2024, approximately two months after filing their reply brief for the motions discussed above. Plaintiff subsequently moved to strike the Offer of Proof. For the reasons discussed below, the Court declines to consider Defendants' offer of proof and concludes that Plaintiff's Motion is moot as a result.

Defendants cite *Rote v. Comm. on Jud. Conduct & Disability of the Jud. Conf. of the U.S.*, No. 3:19-cv-1988-SI, 2022 WL 2116088, at *2 n.2 (D. Or. June 13, 2022), in support of their filing. There, the court construed a pro se plaintiff's "offer of proof" as a motion for leave

to file a sur-reply, which it granted. *Id.* Here, Defendants are not pro se, and to the extent that they are requesting that the Court consider their offer of proof as a motion for leave to file a sur-reply, this Court declines to do so. LR 7(e)(3) (After a reply is filed, and "[u]nless directed by the Court, no further briefing is allowed.").

In any event, the Court concludes that Defendants' offer of proof is not timely. An offer of proof under "[Federal Rule of Evidence] 103(a)(2) is meant to give the trial judge *contemporaneous* knowledge about the proposed evidence . . . at the time it is offered. Presentation of an offer after the trial . . . does not help the trial judge, and is too late." *United States v. Wen Chyu Liu*, 716 F.3d 159, 170–71 (5th Cir. 2013) (emphasis in original). During trial, Defendants did not raise the terms of the release agreement as a reason to prevent Mr. Warkentien from testifying despite providing the agreement to Plaintiff during discovery. Defs.' Offer of Proof 5. This belated offer of proof, "by which time counsel no doubt has engaged in quite a bit of Monday-morning quarterbacking, does not provide what an offer of proof is supposed to: an alternative view of what the trial would have looked like" had the issue been raised and the Court ruled differently. *United States v. Morrison*, 833 F.3d 491, 505–06 (5th Cir. 2016). Because the offer of proof is not timely, the Court declines to consider it further.

Because the Court declines to consider the offer of proof—including by treating it as a sur-reply—Plaintiff's motion to strike is denied as moot.

## V.    Remaining Motions

Also before the Court is a stipulated motion to amend the judgment. As originally filed, the amount of prejudgment interest was incorrectly calculated. The Court grants that motion without further discussion.

Defendants also filed Objections to Plaintiff's Bill of Costs. Plaintiff acknowledged the miscalculation and submitted a revised Bill of Costs. Reply to Objections 2, ECF 99. The Court grants Plaintiff's request to substitute the revised Bill of Costs for the previous version.

## CONCLUSION

The Court DENIES Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial or Remittitur [93]. The Court DENIES Plaintiff's Motion to Strike [102]. The Court GRANTS Plaintiff's Stipulated Motion to Amend the Judgment [97]. And the Court GRANTS Plaintiff's request [99] to substitute the revised Bill of Costs for the previous version.

IT IS SO ORDERED.

DATED: _____February 4, 2025_____.


_____Marco Hernandez_____
MARCO A. HERNÁNDEZ
United States Senior District Judge